UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GERALD T. MANN and LAUREL MANN,
individually and as trustees of the
NAZARETH SECURITY TRUST,

    Defendants.
_____/

CASE NO. 1:07-CV-260

HON. ROBERT J. JONKER

## OPINION AFTER TRIAL

This is a civil action to reduce to judgment tax assessments totaling over $1.3 million, and to authorize enforcement of Plaintiff's resulting tax lien against Defendants' interest in the real property occupied by Defendants Gerald T. and Laurel Mann as their principal residence. The Court established the amount and existence of the tax lien by summary judgment (docket # 75). The Court reserved remaining issues for trial. The Court conducted a final pretrial conference on January 12, 2009, and a bench trial on January 13, 2009. The Court makes the following findings of fact and conclusions of law under FED. R. CIV. P. 52. The Court will enter a judgment separately.

### FINDINGS OF FACT

#### Background

1.    Defendants Gerald T. Mann and Laurel Mann reside within the jurisdiction of this Court. (Amended Compl., docket #. 37, ¶¶ 2, 3; Gerald T. Mann Answer to Amended Compl., docket # 38, ¶ 2; Laurel Mann Answer to Amended Compl., docket # 39, ¶ 3.)

2.      On August 15, 2002, Gerald T. Mann and Laurel Mann each entered into a plea agreement with the United States of America in an earlier criminal action in this district. (Pl.'s Trial Ex. 8.) Under the plea agreement, Dr. Mann agreed to plead guilty to Count Four of the indictment, which charged him with income tax evasion in violation of 26 U.S.C. § 7201. (*Id.*) Under the plea agreement, Dr. Mann also agreed to file completed and correct federal income returns. (*Id.*) Charges against Laurel Mann were dismissed.

3.      After Dr. Mann filed corrected federal income tax returns, the IRS made assessments against him, and issued him notice and demand for payment, for unpaid federal income taxes for the 1993-99 tax years on November 11, 2002 (1999 tax year), December 2, 2002 (1997 and 1998 tax years), January 6, 2003 (1995 and 1996 tax years), and April 28, 2003 (1993 and 1994 tax years). (Amended Compl. ¶ 5; Pl.'s Mot. for Summ. J., docket No. 68-7, Ex. 7.)

4.      Dr. Mann did not pay the amount of the IRS assessments against him in full. (Amended Compl. ¶ 7.) The United States of America filed this case to reduce to judgment federal income tax assessments against Dr. Mann and to foreclose the federal tax liens associated with those assessments against the real property commonly known as 316 Margaret Street, East Lansing, Michigan 48823 ("Margaret Property").

**Procedural Background**

5.      Laurel Mann did not file a timely answer in this case and default entered against her. (*See* Mot. for Ext. of Time to File Answer by Def. Laurel Mann, docket # 13). Eventually, she obtained counsel and moved to set aside the default and for leave to file an answer. (*See id.*) The Court granted that motion and allowed her to proceed in the case (docket # 33). Counsel later withdrew from the representation, and Laurel Mann ceased active defense of the case on her own

behalf.  Ultimately the Court entered default against Mrs. Mann again because of her failure to appear and defend, and for the reasons set forth in the Court's order entering the default (docket # 85.)  The day after the Court defaulted Mrs. Mann, and the morning of trial, Dr. Mann submitted to the Court a document purporting to grant to Dr. Mann power of attorney for Mrs. Mann.  For the reasons the Court stated on the record at trial, Mrs. Mann remains in default (docket # 85).

      6.      The Court also entered default against both of the Manns in their capacities as trustees of the Nazareth Security Trust (docket # 64).

      7.      The Court granted the United States' motion for summary judgment (docket # 68), reducing to judgment against Dr. Mann the federal tax assessments of $1,383,862.03, plus statutory accruals from July 30, 2008 until paid.  (Opinion, docket # 75.)

## The Issues For Trial

      8.      The United States originally claimed rights to 100% of the anticipated proceeds flowing from a sale of the Margaret Property.  Before trial, the United States reduced the amount it claimed to 50% of the proceeds of such a sale.  (Pl.'s Trial Br., docket # 80, at 2.)

      9.      The issues for trial were the nature and extent of Dr. and Mrs. Mann's respective interests in the Margaret Property at the time the federal tax liens attached and whether the United States could foreclose its liens against the Margaret Property, sell the property under 26 U.S.C. § 7403, and recover some or all of the proceeds of such a sale.

      10.      The parties submitted a proposed final pretrial order on a joint basis as required by Court order.  (*See* Proposed Final Pretrial Order, docket # 82.)  During the final pretrial conference Dr. Mann appeared to equivocate regarding his consent, but he offered no credible rebuttal to his

recited consent, and no alternative plan of trial. The Court adopted the final pretrial order as proposed (Order, docket # 85.)

11.     During the trial, the United States' exhibits were admitted without objection. Dr. Mann was the government's only witness. The defense offered no defense within the scope of the final pretrial order.

12.     The Court rejected Dr. Mann's belated attempt to call Edward Murphy, the government's lead trial counsel, as a witness. This was because the final pretrial order made no mention of any intent to call Mr. Murphy as a defense witness. In addition, this was because Dr. Mann indicated that he wished to use the examination to show that there exists no debt owed on the income tax assessments. Dr. Mann has asserted repeatedly throughout the course of this litigation that he owes no debt on the income tax assessments, filing and citing materials that have become familiar to the Court as classic tax protester materials. The Court has rejected repeatedly Dr. Mann's arguments that there is no debt owing on the assessments.

13.     The Court observes that when Dr. Mann chooses to participate meaningfully in this case, he is capable of doing so. When he does not wish to do so, he obfuscates, answers all questions in the form of a question and generally attempts to impede the ordinary flow of civil process.

**Real Estate Facts**

14.     By warranty deed dated July 17, 1987, and recorded on August 7, 1987, Dr. and Mrs. Mann purchased the Margaret Property, which is more fully described as:

> Lot 65, Cahill Gardens No. 1, City of East Lansing, Ingham County, Michigan, according to the recorded plat thereof, as recorded in Liber 24 of Plats, Page 7, Ingham County Records.

(Pl.'s Trial Br., docket # 80, Ex. 1.)  This was presumptively a tenancy by the entireties because the deed recited the Manns' legal status as husband and wife.

15.     By warranty deed dated February 1, 1994, and recorded March 9, 1994, the Manns transferred title to the Margaret Property to the Nazareth Security Trust.  (*Id.* at Ex. 2.)  The Nazareth Security Trust was under the effective control of the Manns – and Dr. Mann in particular – based on personal relationships with the trustees.

16.     The Nazareth Security Trust initially issued 50 trust certificate units to Gerald T. Mann and 50 trust certificate units to Laurel Mann on February 1, 1994.  (*Id.* at Ex. 4.)

17.     Gerald T. Mann and Laurel Mann each transferred their certificate units in the Nazareth Security Trust to Burroughs Tool Trust on February 7, 1994.  (*Id.*)  The Burroughs Tool Trust was also under the effective control of the Manns – and Dr. Mann in particular.

18.     The Burroughs Tool Trust issued 50 certificate units to Gerald T. Mann and 50 certificate units to Laurel Mann on February 1, 1994.  (*Id.*)

19.     The Burroughs Tool Trust Indenture did not require spousal consent for the alienation of either Gerald T. Mann's or Laurel Mann's trust certificate units, nor did it include a spousal right of survivorship to the trust certificate units.  (*Id.*)

20.     The Nazareth Security Trust was established shortly before Gerald T. Mann's 1993 federal income tax liability accrued, and the purpose of transferring title to the Margaret Property to the Nazareth Security Trust was to hinder creditors, including any future malpractice creditors.  (Pl.'s Mot. for Summ. J., docket # 68, Ex. 1 at 18:12-19:12; docket # 68 at Ex. 5; and Ex. 9.)

21.     After the transfer of title to the Margaret Property to the Nazareth Security Trust, Gerald T. Mann and Laurel Mann continued to reside at the Margaret Property and to have control over the Margaret Property. (*Id.*, Ex. 1 at 21:16-24:21.)

22.     Gerald T. Mann arranged to have his sister, Eileen LaMothe, appointed as co-trustee of the Nazareth Security Trust to ensure his continuing control over the trust assets. (*Id.*, Ex. 1 at 37:14-38:2; Pl.'s Resp. to Order to Show Cause, docket # 18, Ex. 1 at 22.)

23.     Gerald T. Mann also arranged for the appointment of his sister Karen Snyder as co-trustee of Burroughs for the same reason. (Pl.'s Mot. for Summ. J., docket # 68, Ex. 1 at 46:10-47:3; Pl.'s Resp. to Order to Show Cause, docket # 18, Ex. 1 at 22.)

24.     By warranty deed dated August 24, 2007, after the commencement of this suit, the Manns, acting as co-trustees of the Nazareth Security Trust, transferred title to the Margaret Property from the Nazareth Security Trust back into their own names as tenants by the entireties. (Status Report, docket # 30-3, Ex. B at 1-2.)

25.     The 2007 transfer of title occurred after the IRS assessments against Gerald T. Mann and notice and demand for payment from him in 2002 and 2003. (*See* Mot. for Summ. J., docket # 68-7, Ex. 4; Status Report, docket # 30-3 at 1-2.)

## CONCLUSIONS OF LAW

1.     The Court has jurisdiction over this action. 28 U.S.C. §§ 1331, 1340 and 1345; 26 U.S.C. §§ 7402(a) and 7403(c).

2.     The United States' federal tax liens relating to unpaid federal income taxes for tax years 1993-99 attached to all of Gerald T. Mann's property and rights to property, including his interest in the Nazareth Security Trust and the Burroughs Trust, as of the dates of IRS assessments

against him, in late 2002 and early 2003.  *See* 26 U.S.C. §§ 6321, 6322.  No subsequent transaction could change that.  It is undisputed that the Nazareth Security Trust held title to the Margaret Property at the time the liens arose.

       3.       Michigan's Uniform Fraudulent Transfer Act does not require that the United States seek to set aside the 1994 transfer of title to the Margaret Property from the Manns to the Nazareth Security Trust, and the Manns themselves have no such right.  *See* MICH. COMP. LAWS § 566.37 (2007).  The government has not pursued avoidance of the transfer but rather has accepted the transfer as creating a tenancy in common.  The Manns have not attempted to argue that the transfer is voidable, and they have no right to avoidance of the transaction.

       4.       The Nazareth Security Trust was and is the alter ego of either Dr. Mann or of the Manns together, or it held title to the Margaret Property as the nominee of Gerald T. Mann or the Manns together (and it is not necessary to determine which, in light of the United States' concession that it will not object to distribution of half of the net proceeds of a sale to Mrs. Mann, subject to possible minor adjustment for any unpaid property taxes through the date of sale).  *See Spotts v. United States*, 429 F. 3d 248, 253 n. 2 (6th Cir. 2001); *Porta-John of America, Inc. v. United States*, 4 F. Supp. 2d 688, 700-01 (E.D. Mich. 1998); *Sumpter v. United States*, 302 F. Supp. 2d 707, 720-21 (E.D. Mich. 2004).  The Court notes that the Manns treated the Nazareth Security Trust as though it had substance, holding meetings, even up to the time of the 2007 transfer.  (*See* Pl.'s Trial Ex. 3.)

       5.       The conveyance of the Margaret Property to the Nazareth Security Trust defeated the statutory presumption that the Manns owned the Margaret Property as tenants by the entirety.  The conveyance eliminated two of the hallmarks of a tenancy by the entirety: right of survivorship and restraint on alienation.  *See United States v. Craft*, 535 U.S. 274, 282-83 (2002) (As a tenant by the

entirety, husband could not alienate the real property at issue without his wife's consent, and husband possessed right of survivorship). Following the conveyance of the Margaret Property to the trust, the Manns' interests in the Margaret Property were as tenants in common. *See id.* at 280 ("The common law characterized tenants in common as each owning a separate fractional share in undivided property"). As such, each of the Manns is entitled to an undivided 50% interest in the property, and the Plaintiff is entitled to enforce its lien against the whole property, and to recover Dr. Mann's 50% of the proceeds of sale.

      6.     The Court need not consider whether to deny the United States the right under 26 U.S.C. § 7403 to sell the entire Margaret Property in foreclosure, because Dr. Mann's interest is as a tenant in common, and because Laurel Mann has offered no reason to consider the *Rodgers* factors in any event. *See Rodgers v. United States*, 461 U.S. 677 (1983); *United States v. Davenport*, 106 F.3d 1333, 1338 (7th Cir. 1997). Even if it were necessary to apply the *Rodgers* factors in this case, the Court's decision would not change. Under the first *Rodgers* factor, a court would consider the extent to which the government's financial interests would be prejudiced if the government had to pursue a forced sale of the partial interest in real property actually liable for the delinquent taxes. *Rodgers*, 461 U.S. at 710. In this case, a forced sale of Dr. Mann's partial interest in the Margaret Property alone would prejudice the government, because it is unlikely that any market for that partial interest exists. Under the second *Rodgers* factor, a court would consider whether the third party with a non-liable, separate interest in the property has a legally recognized expectation that there would be no forced sale. *Id.* at 710-11. Mrs. Mann, a defendant in this action, has been on notice that the government sought a forced sale of the Margaret Property, and she has squandered her opportunities to protect that interest. She can have no reasonable expectation that her separate interest in the

property would not be subject to forced sale. The third *Rodgers* factor would have a court consider the likely prejudice to the third party associated with dislocation and the loss of a residence. Mrs. Mann would most likely be prejudiced to some extent by the sale of the Margaret Property. But, Mrs. Mann would receive a significant portion of the proceeds of the sale of the property (minus 50% of any property taxes still owing at the time of sale), a sum that should allow her to settle into another residence promptly. Moreover, she has not availed herself of multiple opportunities to protect her interest, both in legal proceedings, and in good faith settlement overtures from the government. Finally, the fourth *Rodgers* factor would have a court consider the relative character and value of the non-liable and liable interests in the property. *Id.* In this case, the relative character and value of the non-liable and liable interests would be very similar.

7. The Court concludes that the United States may foreclose its lien against all competing interests in the Margaret Property, sell the property under 26 U.S.C. § 7403, and recover 50% of the proceeds of the sale to be applied against the outstanding assessed tax liability.

8. This opinion resolves the last issue in the case, and Judgment will enter in favor of the United States and against the Defendants as provided here, and in this Court's earlier order of summary judgment.

Dated:   January 28, 2009         /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  UNITED STATES DISTRICT JUDGE